Kuhn v. Warnock.

---

## ERROR

[Hamilton (1st) Circuit Court, February 2, 1905.]

Giffen, Swing and Jelke, JJ.

ROBERT KUHN v. WILLIAM WARNOCK AND CHARLES STRAHL.

**Jury's Finding on Evidence Sustained on Error.**
When the significance and meaning of a conversation regarding compensation in securing certain options, embodied in the testimony submitted to the jury, depends upon the emphasis which was placed on certain words and particularly on the pronoun "I," a reviewing court will give it a construction consistent with the finding of the jury.

*Max B. May,* for plaintiff in error.

*Shay & Cogan,* for defendants in error.

**PER CURIAM**

The only error complained of in this case is that the verdict and judgment of the court below is against the weight of the evidence.

Counsel for plaintiff in error in his zeal has urged upon us not to apply, without great and careful consideration, the principle that a reviewing court will not disturb the judgment, on the ground that the verdict is against the weight of the evidence, unless it is manifestly so. After a careful reading of the record, we are of opinion that this is *par excellence* a case for the application of this rule.

It appears that the defendant, Robert Kuhn, was the president and acting as the representative of the Empire Coal Mining Co., in securing a large number of options embracing a wide tract of coal land. In his capacity as president, or such representative, he had given Warnock and Strahl general instructions as to the terms and methods on which they were to acquire these options.

It developed that there were three parcels of land in the middle of this tract which they had failed to secure, and that at a meeting in the office of Theodore Neff, in Bellaire, said Warnock and Strahl reported their failure, and said they were unable to secure these parcels of land on the terms provided in their instructions. It seems, thereupon, Mr. Kuhn withdrew these gentlemen either to another room or to a different part of the same room, where the following conversation took place, as narrated in the testimony of Mr. Strahl:

"A. He said to me, 'What is the reason that you haven't these three farms optioned?' I told him that the farmers — those three wouldn't take the price that we had been optioning the other farms for, and he says, 'What will they take?' I says, 'I don't know, but I believe they can be got for fifteen dollars an acre.' 'Well,' he says, 'go and take them.' My next question was, of course, 'What is in it for us, Mr. Kuhn, if we go and take these options?' And he says, 'I will tell you. If you go and take these options up and take them up in my name that I will pay you the half of the difference between the option

Kuhn v. Warnock.

price and fifteen dollars an acre.' And he went and—well, I believe Mr. Kuhn at that time give us his address—yes—where to send those options to, and said to send them to him; take them up in his name and send them to him at the McClure House in Wheeling.''

It seems clear that the transaction in regard to these three parcels of land was to be under a different and separate arrangement from that under which the options had been procured on the other parcels in the tract.

The significance and meaning of the conversation would be directly opposite, dependent upon what emphasis was put upon the pronoun ''I'' in this conversation. As this appears in the cold typewritten record, we can not tell, excepting that we are bound to give it a construction consistent with the verdict and judgment below. If Mr. Kuhn said:

''*I* will tell you. If you go and take these options up and take them up in *my* name that *I* will pay you the half of the difference between the option price and fifteen dollars an acre,'' it would be very plain who was the principal and for whom Warnock and Strahl were acting in securing these options, and who should pay the commission.

We find nothing necessarily inconsistent in the letter of May 11, 1901, with the view that Robert Kuhn was the principal in this transaction. It would seem, after a reading of the record, that with Robert Kuhn acting either for himself or for the Empire Coal Mining Co., it would not be expecting too much of him by way of business courtesy, to have looked after the interests of Warnock and Strahl, and at least to have called their attention to the closing up of matters, so that their rights could have been defined and their claim then asserted. It may very well have been that this indifference on the part of Mr. Kuhn prejudiced him in the eyes of the jury and led them to somewhat discount his testimony. If they did so, that was within their province. Not having any of these parties before us and so much in this record being susceptible of either one of two opposite constructions, we are compelled to apply the principles first above mentioned.

Judgment affirmed.

SWING, GIFFERS and JELKE, JJ., concur.